# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHAM SINGMUONGTHONG, ) | 1:09cv01328 DLB |
| ) | |
| ) | |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S |
| ) | SOCIAL SECURITY COMPLAINT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## BACKGROUND

Plaintiff Kham Singmuongthong ("Plaintiff") seeks judicial review of a final decision of

the Commissioner of Social Security ("Commissioner") denying her application for disability

insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and

XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs,

which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States

Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her applications for DIB and SSI in August 2006.  AR 126-28, 129-33.  She

alleged disability since May 29, 2006, due to her lower back, depression, headaches, trouble

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

sleeping, body pain, her vision and a hysterectomy.  AR 140-54.  After Plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ").  AR 82-85, 87-91, 92-95.  On May 7, 2008, ALJ Michael Haubner held a hearing.  AR 41-60.  He denied benefits on August 29, 2008.  AR 29-40.  The Appeals Council denied review on May 29, 2009.  AR 5-9.

Hearing Testimony

ALJ Haubner held a hearing in Fresno, California, on May 7, 2008.  Plaintiff appeared without a representative, but was provided an interpreter.  Vocational expert ("VE") Judith Najarian also appeared and testified.  AR 43-45, 49.

At the outset of the hearing, ALJ Haubner explained Plaintiff's right to a representative. Plaintiff wished to proceed without representation.  AR 44-45.

Plaintiff was born in 1950.  She completed the fourth grade in Laos.  She speaks and understands very little English.  If she got lost, she could not ask directions in English.  She can write her name, but cannot read or write in English.  She cannot read the newspaper.  AR 48.

The VE testified in response to questions from the ALJ.  The VE reviewed Plaintiff's past relevant work that she inspected, sorted, and packed nuts and bolts and she ran a machine.  The VE testified that the DOT classification is production machine tender, nuts and bolts, which is medium and 2, unskilled.  Her lifting of 50 pounds was consistent with medium work. Plaintiff's work assembling keyboards is classified in the DOT as key module assembly, which is light and 2, unskilled.  As performed, it was medium work.  Plaintiff's work sanding paint off of farming equipment was classified as buffer, sander in the DOT and was medium and 2, unskilled. As performed, it was heavy.  All of Plaintiff's past work was unskilled with no transferability. AR 49-50.

For the hypotheticals, the ALJ asked the VE to assume a person of the same age, education, language and experience as Plaintiff.  For the first hypothetical, this person could lift and carry 20 pounds occasionally, 10 pounds frequently.  This person could stand and walk for six hours of a normal eight-hour day with normal breaks and should be able to sit six hours.  This person did not require an assistive device and had no postural, manipulative or communicative

limitations.  This person had some visual impairments that might be corrected with better eyeglasses.  The VE testified that this person could not do Plaintiff's past relevant work as she performed it.  She could perform the keyboard assembly as the DOT has it at the light level, but not as she did it at the medium level.  AR 50-51.

For the second hypothetical, the ALJ asked the VE to assume a person who was able to understand, carry out, and remember three and four-step job instructions, was able to respond appropriately to coworkers, supervisors and the public and was able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision. The VE testified that this person could perform Plaintiff's past relevant work for all three jobs. AR 51.  If hypotheticals one and two are combined, the VE testified that it is the same answer as for hypothetical one.  AR 51.

For the third hypothetical, the ALJ asked the VE to assume a person who is moderately limited in the ability to perform detailed instructions, moderately limited in the ability to complete a normal workday, and moderately limited in the ability to understand, remember and carry out detailed instructions.  The VE testified that this person could not do Plaintiff's past relevant work or any other work.  AR 52.

For the fourth hypothetical, the ALJ asked the VE to assume a person who is mildly limited in the ability to perform activities of daily living, mildly limited in maintaining social functioning, moderately limited in the ability to maintain concentration, persistence, and pace, and has no episodes of decompensation.  The VE testified that this person could not do Plaintiff's past relevant work or any other generally appearing work.  AR 52.

Before proceeding to the next hypothetical, the ALJ asked the Plaintiff additional questions.  Plaintiff testified that she can lift and carry five to ten pounds without hurting herself. She can stand for 5 minutes at one time before she has to sit down and rest.  She can sit for about 50 minutes before she has to get up and move around.  She can walk for a half mile at one time. She can concentrate or pay attention to one thing for about 5 minutes.  She lies down twice a day. AR 52-53.

For the fifth hypothetical, the ALJ asked the VE to assume a person who could lift and carry five to ten pounds, could stand five minutes at a time, could walk a half mile at a time, could sit fifty minutes at a time, could concentrate five minutes at time and needed to lie down two to three hours of eight.  The VE testified that there was no past relevant work and no other generally appearing work.  AR 53-54.

The ALJ resumed questioning of Plaintiff.  Plaintiff testified that she lives with her relatives.  She is not married.  She does not have a driver's license.  She does not know how to ride a bus.  She depends on others for a ride.  When she was working, she drove to work.  She has a valid driver's license from a different state with restrictions for corrective vision.  She last drove in 2005.  She stopped driving because she was involved in an accident.  Her car was totaled.  AR 54-55.

Plaintiff testified that she cares for her own personal needs.  She brushes her own teeth. She showers or bathes herself.  She puts on her own clothes.  She cooks or prepares very light meals once a day.  She does dishes once a day.  She can do a little bit when no one is home. She does not make her bed.  She changes the sheets every two weeks.  She does laundry once every two weeks.  She does not go shopping or to the market for groceries.  She last went grocery shopping about a month prior to the hearing.  It's fair to say that she goes shopping about once a month.  AR 55-57.

Plaintiff testified that she talks on the telephone two times a month.  She does not have a cell phone.  She also does not have a checking or a savings account.  She has no bills.  Plaintiff testified that she reads the Laos Bible every day for 10 to 20 minutes.  She reads about two hours total on an average day.  She goes to church or a place of worship two or three times a month. AR 57- 58.

Plaintiff testified that in addition to osteopenia, low back problems and mental problems, she has constant pain in her low back.  It's an 8 or 9 on a scale of 1 to 10.  She also cannot sleep. She has a memory problem and is fearful.  She gets regular psychological or psychiatric treatment every month.  AR 58-59.

Medical Record

Undated progress notes from the Crusader Clinic in Illinois indicated that Plaintiff had back pain due to a fall.  The provider suspected a herniated disc and/or osteopenia.  The provider also noted headache and dizziness.  AR 204.

On November 14, 2006, Rustom F. Damania, M.D., an internist, completed a consultative examination.  Plaintiff reported that she had vision problems, which caused headaches.  She complained of chronic low back pain for three to four years.  She also reported depression and insomnia.  AR 209.  On examination, Plaintiff vision tested with eyeglasses using an illiterate chart.  Her vision was 20/20 in the right eye and 20/30 in the left.  She had difficulty with close vision during the finger test.  AR 210.  Her gait, station and posture were normal.  Her range of motion generally was within normal limits and her straight leg raising was normal.  AR 211.  She had 5/5 power in both upper and lower extremities.  AR 212.

Dr. Damania diagnosed vision problems, probably requiring bifocal eyeglasses, and chronic low back pain.  He opined that Plaintiff should be able to lift and carry 20 pounds occasionally, 10 pounds frequently.  She should be able to stand and walk for six hours out of a normal eight hour workday with normal breaks.  She should be able to sit six hours.  She did not require an assistive device.  She had no postural, manipulative or communicative limitations.  She had some visual impairment that may be corrected with better eyeglasses.  AR 212.

On November 14, 2006, Shireen R. Damania, M.D., a board certified psychiatrist, completed a consultative psychiatric examination.  Plaintiff reported that she feels depressed and anxious because she is not able to work and has no source of income.  Dr. Damania noted that in response to many questions, Plaintiff responded "I don't remember."  However, when the interviewer persisted, Plaintiff was able to recall for most of the questions.  AR 213-14.

On mental status examination, her mood was mildly depressed.  She had a broad affect appropriate to the thought content and situation.  She denied suicidal or homicidal ideations, but expressed feelings of helplessness and hopelessness.  She was oriented to place and person.  She did not know the month and day, but recalled the year.  Her memory for recent and past recall

was intact.  Her attention span was within normal limits.  She was of average intelligence and could do simple math.  Her insight and judgment were fair.  AR 214-15.

Dr. Damania diagnosed Adjustment Disorder with Depressed Mood and assigned a Global Assessment of Functioning ("GAF") of 61.  Plaintiff had no noted difficulties in memory, concentration, persistence or pace.  She was able to understand, carry out and remember three- and four-step job instructions in a work like setting.  She was able to respond appropriately to coworkers, supervisors and the public.  She was able to respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision.  AR 215-16.

On January 8, 2007, H. Amado, M.D., a state agency medical consultant, completed a Psychiatric Review Technique form.  Plaintiff had adjustment disorder with depressed mood, a medically determinable impairment that did not precisely satisfy the diagnostic criteria for an affective disorder.  AR 220-21.  Dr. Amado opined that Plaintiff had mild restriction of her activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  She had no repeated episodes of decompensation.  AR 226.

On January 8, 2007, Dr. Amado also completed a Mental Residual Functional Capacity Assessment form.  Dr. Amado opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions.  AR 229.  She also was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  AR 230.  Dr. Amado concluded that she was able to sustain simple repetitive tasks, to complete an 8 hour workday, to relate and to adapt.  AR 231.

On January 16, 2007, F. Kalmar, M.D., a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form.  Dr. Kalmar opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently.  She could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday.  She could push

6

and/or pull without limitation.  She had no postural, manipulative, visual, communicative or environmental limitations.  AR 234-38.

In April 2007, state agency physicians Dr. Sadda V. Reddy and Dr. Garcia affirmed Dr. Amado's and Dr. Kalmar's earlier assessments.  AR 249-50.

On May 2, 2008, Thayin Vu, LCSW, completed a clinical evaluation.  Plaintiff reported that following a series of family deaths, she started to feel depressed.  She has trouble sleeping, is becoming more isolated, is doing less housework and has frequent thoughts of not wanting to live.  She also has nightmares of seeing people killed in the war in Laos.  She had witnessed killing and slept in bunkers.  On mental status exam, Plaintiff was alert and oriented.  Her mood and affect were sad.  She had no delusions or hallucinations, and her thought process was intact and within cultural norms.  She was taking Lexapro, Armitrytiline, Geodon and Zyprexa.  Mr. Vu diagnosed major depressive disorder, recurrent, severe, with psychotic features and posttraumatic stress disorder ("PTSD"), chronic.  Due to her severe depression and PTSD symptoms, she reportedly had episodes of auditory hallucinations of people yelling at her.  Mr. Vu concluded that it was unlikely Plaintiff could maintain employment on a consistent level.  AR 251-52.

Plaintiff received treatment from Dr. Maximo A. Parayno from May 2007 to February 2008.  He prescribed a variety of psychotropic medications, including Zoloft and Lexapro.  AR 253-59.  In October 2007, Dr. Parayno noted that Plaintiff's affect was blunted and her mood depressed.  She reported nightmares and being hopeless/worthless.  Her memory and concentration were poor.  She was prescribed Zyprexa and Cymbalta.  AR 255.

In January and February 2008, Dr. Parayno again noted that Plaintiff's affect was blunted and her mood depressed.  She reported nightmares and being hopeless/worthless.  Her memory and concentration were poor.  She was prescribed Geodon and Lexapro.  AR 253, 254.

ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through March 31, 2011. She had not engaged in substantial gainful activity since May 29, 2006.  She had the severe impairments of osteopenia, rule out herniated lumbar disc, and an adjustment disorder with depressed mood.  Despite these impairments, the ALJ found that she retained the residual

functional capacity ("RFC") to perform light work.  She could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk for six hours out of an eight-hour workday and could sit for six hours out of an eight-hour day.  She also had the ability to understand, carry out and remember three and four-step job instructions in a work setting, but could not perform more complex tasks.  The ALJ concluded that Plaintiff could perform her past relevant work as a keymodule assembly worker as it is generally performed.  AR 34-39.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(g), 416.920(a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (osteopenia, rule out herniated lumbar disk, and an adjustment disorder with depressed mood) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform her past relevant work as a keymodule assembly worker.  AR 34-39.

Here, Plaintiff argues that (1) the ALJ erred in finding that she could perform her past relevant work because she is illiterate; (2) the ALJ failed to fully and fairly develop the record; (3) the ALJ failed to properly consider third-party evidence; and (4) the ALJ improperly discounted her credibility.

## DISCUSSION

A.    Step Four Evaluation - Past Relevant Work

Plaintiff contends that she does not have the ability to perform her past work in keymodule assembly as it is generally performed because she is illiterate and cannot communicate in English.[2]  Social Security Ruling 82-61 provides that there are three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant

_____

[2]A claimant may be found "illiterate" or "unable to communicate in English" if she is "either illiterate in English or unable to communicate in English or both."  *Silveira v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000).

work.[3]  One test is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. (*The Dictionary of Occupational Titles* (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy)" (emphasis in the original).

According to DOT section 692.685-274, Plaintiff's past relevant work in keymodule assembly requires a Language Level of 2 as usually performed.  Opening Brief, p. 5; DOT 692.685-274.  Language Level 2 requires, among other things, that a person have a passive vocabulary of 5,000-6,000 words, write compound and complex sentences, and speak clearly with correct pronunciation.  Plaintiff asserts that she does not meet these language requirements and cannot perform keymodule assembly work as it is generally performed.  The Commissioner counters that educational factors, such as language, are not relevant at step four of the sequential evaluation process.  *See, e.g., Turcotte v. Astrue,* 2010 WL 2036141, *5 (C.D.Cal. May 19, 2010) (ALJ's consideration of a claimant's educational level, which is to be performed at step five of the sequential evaluation, is arguably a separate consideration from the RFC determination).

The Ninth Circuit has declined to decide whether an ALJ is required to consider a claimant's language skills, including literacy, at step four of the sequential evaluation.  *Pinto v. Massanari*, 249 F.3d 840, 847 n. 5 (9th Cir. 2001).  However, in *Pinto*, the Ninth Circuit explained:

> The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant.  Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision.  These are all factors that Social Security Ruling No. 96-8P requires an ALJ to consider when determining whether a claimant has the residual functional capacity to perform past relevant work.  **Here the ALJ, although noting Pinto's limitation in both his findings of fact and hypothetical to the vocational expert, failed to explain how this limitation related to his finding that Pinto could perform her past relevant work as generally performed.**  See SSR 82-62.

_____

[3] Social Security Rulings are interpretations by the Social Security Administration ("SSA") of the Act.  While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law.  The Ninth Circuit has upheld the Secretary's interpretation of the Act embodies in SSR 82-40, which makes express what is implicit in SSR 82-61.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

*Id*. at 846-847 (emphasis added).

In this case, the ALJ asked the VE to assume a person of the same age, education, language and experience as Plaintiff.  AR 50.  The VE testified that an individual with Plaintiff's residual functional capacity could perform the job of keymodule assembly as identified in the DOT at the light level.  AR 50-51.  Plaintiff argues that the VE's testimony was inconsistent with the DOT because the job of key module assembly requires a language level of 2.

Indeed, the ALJ must determine whether the positions cited by the VE are consistent with the DOT.  The ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether there exists a basis for accepting the VE's testimony over the information contained in the DOT.  *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p).  Where a claimant is illiterate, the ALJ must "definitively explain the deviation."  *See Pinto,* 249 F.3d at 847.

In this instance, the VE did not explain the effect of Plaintiff's "language" or English communication skills on her ability to perform her past relevant work.  The VE also failed to account for the deviation from the Language Level 2 requirement in the DOT for keymodule assembly.

Moreover, the ALJ failed to discuss Plaintiff's alleged illiteracy in his decision.  The Commissioner argues that because the ALJ did not make a finding of illiteracy, this case is distinguishable from *Pinto*.  The Court disagrees.  The hypothetical expressly references Plaintiff's "language," suggesting that the ALJ may have deemed her illiterate and recognized her English language limitations.  Unfortunately, the decision lacks a specific finding or discussion of Plaintiff's "language."  The ALJ's failure makes it difficult for the Court to review the ALJ's analysis and his related finding that Plaintiff had the ability to perform her past relevant work as generally performed.  For these reasons, the Court finds that the ALJ's decision is unsupported and he erred at step four of the sequential evaluation.  As discussed more fully below, the action will be remanded for further analysis.

B.    Plaintiff's Waiver of Counsel

Plaintiff contends that the ALJ failed to obtain a valid waiver of her right to representation and that she was prejudiced as a result.

When a claimant appears at a hearing without counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." _Key v. Heckler_, 754 F.2d 1545, 1551 (9th Cir.1985) (quoting _Cox v. Califano_, 587 F.2d 988, 991 (9th Cir.1978)).  Although a plaintiff has the right to be represented by counsel at an administrative hearing before an ALJ, the "[l]ack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or unfairness in the administrative proceedings." _Key_, 754 F.2d at 1551 (citing _Vidal v. Harris_, 637 F.2d 710, 713 (9th Cir.1981)).

In arguing that her waiver was invalid, Plaintiff cites HALLEX I-2-6-52.[4]  This section of HALLEX addresses an ALJ's opening statement and requires that the ALJ ensure that an unrepresented claimant is capable of making an informed choice about representation.  For example, the ALJ should ask whether the claimant received the hearing acknowledgment letter and enclosures and whether the claimant understood the information.  Once the ALJ has determined that Plaintiff is capable of making an informed choice, he or she will secure, on the record, the claimant's decision concerning representation.

At the beginning of the hearing, the following conversation occurred:

ALJ:  All right.  Ma'am, I see you're here today without a lawyer or other qualified representative. I know we sent you notice in the mail explaining your rights.  Did you understand your rights to representation?  Do you wish to give up your right to go forward without a representative?

CLMT:  How I'm going to do about this?

ALJ:  Well, let me explain your rights to representation.  You have the right to a representative, either a lawyer or other qualified representative is who I recommend, like

---

[4]HALLEX does not have the force and effect of law and is not binding on the Commissioner.  _Moore v. Apfel_, 216 F.3d 864, 869 (9th Cir.2000). The Court will, however, examine the argument.

a paralegal, somebody who's used to doing Social Security cases.  However, we don't provide you one.  It's not like some state courts where they give you a lawyer.  Here if you want a lawyer, you got to get one on your own.  Some of them work for an hourly basis, some of them work for free like the Legal Aid Bureau, or most of them that do Social Security work work on a contingency fee, which means they don't get anything unless you win your case.  Then they get a percentage.  But like I said, we don't get involved in that.  If you want a lawyer, you've got to go out and get one on your own.  But you don't have to have one.  I've reviewed your case.  I'm ready to hear your case today.  Do you wish to give up your right and go forward with your hearing today without a representative?

CLMT:  I don't have one.  I don't know where to obtain one, and I wish to proceed.

ALJ:  Okay.  So you give up your right to representation, and we can go forward today.  Is that correct?

CLMT: I don't know.  Does that mean that I - - you're going to go ahead and proceed with my case?

ALJ: If you give up your right to a representative, we can go forward with your case today.

CLMT: Yes, I can.

ALJ: All right.  Is that what you want to do?

CLMT: Yes.  Go ahead.  You can proceed.  I cannot get one for myself.

AR 43-45.

Although the adequacy of the waiver does not impact whether prejudice or unfairness existed, the Court notes that Plaintiff does not explain how the opening statement failed to comply with HALLEX.  Plaintiff contends that she did not understand her right to representation.  However, the hearing transcript reflects that Plaintiff could not obtain a representative, not that she did not understand her right to have such a representative.

Even if Plaintiff's waiver of her right to counsel was improper, however, the Court examines whether, in the absence of representation, the ALJ "scrupulously and conscientiously" explored all relevant facts.  *Cox*, 587 F.2d at 991; *Vidal*, 637 F.2d at 714 ("the issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by *Cox*.").  In this regard, Plaintiff contends that she was prejudiced by (1) the ALJ's inadequate examination of the VE; and (2) the ALJ's failure to request that Plaintiff's treating physician perform a consultative examination and/or provide a medical source statement.

*Examination of VE*

Plaintiff contends that ALJ's examination did not adequately probe whether the VE's testimony was consistent with the DOT regarding her past relevant work. The Court acknowledges that the ALJ asked the VE to identify Plaintiff's past relevant work and "if there's any differences between the way she did it and the Dictionary of Occupation Titles . . . could you let us know?" AR 49. However, the VE failed to explain any deviation from the DOT at step four regarding Plaintiff's literacy and her ability to perform past relevant work. AR 49-50.

Plaintiff next contends that the ALJ did not adequately probe whether the DOT classification of "keymodule-assembly-machine tender" was the same job Plaintiff performed in the past.[5] Plaintiff claims that she assembled keyboards and was not a "machine tender." Opening Brief, p. 8. The Ninth Circuit has recognized that the DOT is not comprehensive and may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. *See, e.g.,* Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting that DOT is not sole source of admissible information concerning jobs).

Here, the VE did not assign a DOT code to Plaintiff's past relevant work as "key module assembly" in his testimony. AR 50. Instead, the ALJ assigned DOT code 692.685-274 to Plaintiff's work, which is a description for keymodule-assembly-machine tender. AR 39. Based on information in her Work History Report, Plaintiff claims that she was not a "machine tender," and she merely "carried large stepping boards back and forth to table" and "[s]at and crunched all day long." AR 149. However, a review of the Work History Report shows that this description was provided solely to describe Plaintiff's lifting and carrying while performing her keyboard assembly work. It did not encompass all of the job traits. Indeed, the Work History Report expressly affirmed Plaintiff's use of "machines, tools or equipment" in her keyboard assembly job. AR 149.

Plaintiff argues that the DOT does not have a classification for "keyboard assembler" or "keyboard assembly." As noted, the ALJ assigned DOT code 692.685-274 to Plaintiff's work,

---

[5] Plaintiff's additional argument regarding inquiry into specific job tasks is likely directed at whether the VE appropriately classified Plaintiff's past relevant work.

which is keymodule-assembly-machine tender.  AR 39.  The record contains a
Medical/Vocational Decision Guide, which assigned DOT Code 729.687-010 to Plaintiff's past
relevant work doing "Assembly of keyboards."  This DOT Code corresponds with the
classification of Assembler, Electrical Accessories I, which is light, SVP 2 and requires a
Language Level of 2.  AR 171; DOT Code 729-687-010.  On remand, the ALJ should clarify the
appropriate DOT code, if any, for Plaintiff's past relevant work.

> ### *Medical Record*

Plaintiff claims that because the ALJ failed to request a medical source statement or RFC
from her treating physicians, the ALJ did not fulfill his duty to develop the record.  The
Commissioner's regulations provide that "[a]lthough [the Commissioner] will request a medical
source statement about what you can still do despite your impairment(s), the lack of the medical
source statement will not make the report incomplete."  20 C.F.R. § 404.1513(b)(6).  "An ALJ's
duty to develop the record further is triggered only when there is ambiguous evidence or when the
record is inadequate to allow for proper evaluation of the evidence."  *See* Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

In his decision, the ALJ acknowledged that Plaintiff had "submitted minimal records from
treating providers in support of her claim."  AR 36.  The ALJ then discussed progress notes from
the Crusader Clinic, which mentioned headache and dizziness, but admittedly did not contain any
"formal diagnoses, test results, or abnormal clinical signs or findings."  AR 36.  The ALJ also
indicated that he reviewed "chart notes" from Dr. Parayno, listing a number of symptoms, but
providing "little detail or insight into any mental limitations."  Although the ALJ found the notes
"useful," they were "not instructive on the issue of specific mental limitations."  AR 38.  Given
the ALJ's statements regarding the general inadequacy of the treatment records, the Court finds
that he failed to adequately develop the record and did not meet the heavy burden imposed by
*Cox*.

The Commissioner contends that the record was neither ambiguous nor inadequate
because it contained the independent findings of at least two consultative examiners, one physical
examination by Dr. Rustom Damania and one psychiatric examination by Dr. Shireen Damania.

A consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations.  _Tonapetyan v. Haler_, 242 F.3d 1144, 1149 (9th Cir. 2001).  In this instance, the ALJ adopted the residual functional capacity assessments of the consultative examiners, finding that neither Plaintiff's treatment records nor her testimony provided support for a more restrictive residual functional capacity.  Based on the lack of treatment records and the absence of functional assessments, this finding is unsupported.  The ALJ's determination that Dr. Parayno's progress notes did not suggest limitations that were inconsistent with the conclusions of Dr. Damania is a mere conclusion.  The ALJ provided no discussion or analysis to demonstrate consistency.  AR 38.

Based on the above, the Court finds that the ALJ failed to develop the record regarding the VE's testimony and the medical record.  The ALJ also failed to meet the burden imposed by _Cox_.

C.    Compliance with SSR 82-62

Plaintiff argues that the ALJ failed to develop the record according to SSR 82-62 regarding the physical and mental demands of her past relevant work.  In particular, Plaintiff faults the ALJ for failing to make a finding of fact as to the physical and mental demands of her past job/occupation.  Opening Brief, pp. 17-18.  The Commissioner counters that the ALJ relied on the VE's testimony to determine the physical and mental demands of her past relevant work.

In reaching his decision, the ALJ expressly relied on the VE's testimony when comparing Plaintiff's residual functional capacity with the physical and mental demands of her past relevant work.  An ALJ may take administrative notice of any reliable job information, including information provided by a VE.  _Bayliss v. Barnhart_, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ noted that according to the VE, Plaintiff's past relevant work as production machine tender, nut & bolts was performed at the medium exertional level with a specific vocational profile of two (unskilled).[6]  Her work as keymodule assembly was generally performed at the light level with a SVP of two (unskilled), but actually performed at the medium level; and her job as buffer/sander

_____

[6]Pursuant to the regulations, unskilled work is work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

was generally performed the medium level with a SVP of two (unskilled), but performed at the heavy level.  AR 39.

Plaintiff appears to argue that the Commissioner improperly conflates SVP with mental demands.  Plaintiff claims that the VE failed to address what mental demands were required in her past relevant work.  However, the ALJ presented the VE with hypotheticals related to non-exertional (mental) limitations and inquired as to whether Plaintiff would be able to perform her past relevant work.  AR 50-52.  Plaintiff does not indicate what additional testimony or information should have been elicited from the VE regarding the physical and mental demands of her past relevant work.  The Court does not find error.

D.      Validity of Regulations

 Insofar as Plaintiff attempts to challenge the validity of Social Security Ruling 82-61, 20 C.F.R. §§ 404.1520(f) ,416.920(f), 404.1560(b) and 416.960(b) to the extent that they preclude the use of a claimant's inability to communicate in English in determining whether a claimant can perform past relevant work, the Court finds it unnecessary to address these arguments.  The Court has found the ALJ's failure to explain how the Plaintiff's illiteracy/language limitation related to his finding that the she could perform her past relevant work as generally performed constituted reversible error.  *See* *Pinto*, 249 F.3d at 847.

E.      Third Party Evidence

Plaintiff next contends that the ALJ failed to properly consider third party evidence from her friend, Chan Phommavongsay.  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir.2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e).  Such testimony is competent evidence and "*cannot* be disregarded without comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996) (emphasis in original).  If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Id.* Further, the reasons "germane to each witness" must be specific.  *Stout*, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

Here, the ALJ expressly discussed the third-party statement provided by Chan Phommavongsay.  The ALJ gave "little weight" to the statement, reasoning that many of the statements were vague and not quantified regarding the areas allegedly affected by Plaintiff's impairments.  AR 39.  As to specific statements, the ALJ disregarded the claims that Plaintiff had the ability to lift only five pounds and walk up to two blocks because they were not consistent with the physical examination findings of the consultative examiner or the State agency medical consultant.  AR 39.  An ALJ may properly discredit the testimony of lay witnesses that is inconsistent with the medical record.  _Bayliss_, 427 F.3d at 1218; _Hill v. Astrue_, 2009 WL 4573245, *7 (C.D.Cal. Nov. 30, 2009) (rejecting portions of lay witness statements that were not consistent with objective medical evidence).  Both the consultative examiner and the state agency physician found that Plaintiff should be able to lift and carry 20 pounds occasionally, 10 pounds frequently.  She also should be able to stand and walk for six hours out of an eight hour workday with normal breaks.  AR 212, 234-38.  However, as previously discussed, the ALJ failed to develop the medical record.  Accordingly, the ALJ's basis for discrediting the lay witness testimony is unsupported.  This error can be addressed on remand.

F.     Credibility

Plaintiff contends that the ALJ's reasons for rejecting her credibility were not sufficient.  Opening Brief, pp. 28-29.

In _Orn v. Astrue_, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  _See Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir.1989).  However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  _Morgan_, 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive."  _Id._  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  _Id._
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  _See_ 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the

18

statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ set forth more than one reason for questioning Plaintiff's credibility. He first noted that while Plaintiff had a "fairly good work history, she has only worked for 15 years of her life at the substantial gain activity level." AR 38, 136. Plaintiff states that she arrived in the United States in 1978 and is unable to communicate in English. She argues that her credibility is enhanced because she worked 15 years under those circumstances. As the Commissioner points out, however, the ALJ correctly found diminished credibility because Plaintiff worked for only about half the years that she lived in the United States. An ALJ may consider a claimant's work history as part of the credibility analysis. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Molano v. Astrue*, 2010 WL 3260137, *13 (E.D.Cal. Aug. 18, 2010) (ALJ properly found diminished credibility where claimant worked for less than half of the 15 years before his alleged disability).

Next, the ALJ discounted Plaintiff's testimony because she was taking minimal pain medication (naproxen and naproynsyntex) with no reported side effects. AR 39. Plaintiff asserts that her minimal pain medication resulted from a lack of income and lack of insurance as reported to Dr. Damania. AR 213-14. A conservative course of treatment can undermine allegations of debilitating pain. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment). However, such a fact is not a proper basis for rejecting the claimant's credibility where she cannot obtain treatment due to a lack of funds. *Orn*, 495 F.3d at 638. The record reflects that Plaintiff told Dr. Shireen Damania in November 2006 that she had no money to see a physician and that she was prescribed Naproxen when she had insurance. AR 213. Despite these statements, the record reflects that during the time she allegedly could not afford treatment she in fact received prescriptions and other medical care. For instance, one disability report indicated that Plaintiff

was taking naproxen and naproynsyntex.  AR 145.  Another disability report indicated that
Plaintiff had been prescribed acetaminophen for pain by a physician at University Medical Center
between September 2006 and February 2007.  AR 179.  Therefore, Plaintiff's conservative
treatment supports an adverse credibility finding.

The ALJ also questioned Plaintiff's credibility based on her daily activities, which did not
suggest complete disability.  AR 38.  As Plaintiff points out, the Social Security Act does not
require that claimants be utterly incapacitated to be eligible for benefits.  *See, e.g., Howard v.
Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986) (claim of pain-induced disability not gainsaid by
capacity to engage in periodic restricted travel).  However, an ALJ is permitted to consider daily
living activities in his credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)
(claimant's daily activities suggested that she was "quite functional"; claimant could care for her
own personal needs, cook, clean and shop).  An ALJ also may properly consider whether a
claimant's daily activities contradict her other testimony.  *Orn*, 495 F.3d at 638 (citing *Fair v.
Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Here, the ALJ noted that Plaintiff claimed difficulty
with her activities of daily living, personal care and household chores in her function report, but
testified at the hearing that she could take care of her own needs.  AR 164-68, 55-56.  She also
testified that she cooks or prepares very light meals once a day, does dishes once a day, does
laundry once every two weeks, goes shopping about once a month and goes to church or a place of
worship two or three times a month.  AR 55-58.  Accordingly, the ALJ did not err in considering
Plaintiff's daily activities.

The ALJ also discounted Plaintiff's credibility based on observations at the hearing, noting
that Plaintiff stated that she did not even speak enough English to understand directions, but
answered one of his questions before the interpreter translated it.  AR 38.  An ALJ's observations
during the hearing, along with other evidence, constitutes substantial evidence.  *See Drouin v.
Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992).  Plaintiff argues that there is no evidence that
the ALJ speaks Laotian or Thai, so he does not know whether Plaintiff answered his question or
spoke to the interpreter on another matter.  This argument assumes that Plaintiff did not answer in
English or that the interpreter may not have immediately translated Plaintiff's answer.  There is no

indication that either of these assumptions is correct.  Plaintiff also faults the ALJ for not

identifying the question, noting that the hearing transcript does not show that the ALJ asked any

questions about following directions.  Although the ALJ may have inaccurately summarized

Plaintiff's testimony regarding understanding directions, she expressly testified that she

understood very little English and that she did not speak enough English to ask directions in

English.  AR 48.  Thus, the ALJ validly considered whether Plaintiff responded to questions

before they were translated.

   As a final reason, the ALJ noted that Plaintiff originally denied having a driver's license,

but later admitted she had an out-of-state driver's license.  AR 38.  An ALJ may properly consider

inconsistencies in testimony.  *Orn*, 495 F.3d at 635.  Plaintiff argues that she was "merely

confused" and would not have admitted she had a license if she were intending to mislead.

Opening Brief, p. 29.  At the hearing, the following exchange occurred:

> ALJ: Do you have a driver's license?
>
> CLMT: No.
>
> ALJ: How do you get around when you go places?  Do you ride the bus, do you get rides from people, do you walk?  What do you do?
>
> CLMT: I do not know how to ride a bus.  I only depend on others to give me a ride.
>
> ALJ: When you were working before, how'd you get to work?
>
> CLMT: Oh, I was driving before but now I don't drive anymore.
>
> ALJ: When's the last time you had – do you still have a valid driver's license?
>
> CLMT: It's from different state.
>
> ALJ: I didn't ask you that.  Is your - -
>
> CLMT: Yes.  Still valid.

AR 54-55.  On the record, it is clear that the ALJ asked Plaintiff whether she had a driver's

license and she initially said no.  To the extent that Plaintiff implies confusion because she had an

out-of-state license, the ALJ did not limit his question to whether Plaintiff had a *California*

driver's license.  Plaintiff's argument lacks merit.

Based on the above, the Court concludes that the ALJ's analysis was sufficient to show that he did not arbitrarily reject Plaintiff's testimony.  The credibility analysis is supported by substantial evidence and was free of legal error.

### CONCLUSION

Section 405(g) of Title 42 of the United States Code provides: "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court has determined that the ALJ erred by (1) finding that Plaintiff could perform her past work as it is generally performed;  (2) by failing to adequately develop the record; and (3) failing to properly consider lay witness testimony.  The Court finds that these errors can be corrected with further proceedings.  On remand, the ALJ shall make a specific finding as to Plaintiff's literacy and sufficiently explain any deviation from the DOT.  The ALJ also shall

further develop the medical record and consider any lay witness testimony.

### **ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Kham Singmuongthong and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

**Dated:**   **September 16, 2010**             _____ **/s/ Dennis L. Beck**_____
                                             UNITED STATES MAGISTRATE JUDGE