1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KHAM SINGMOUNGTHONG, | ) | 1:09cv1328 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING |
| | ) | PETITION FOR FEES |
| v. | ) | |
| | ) | (Document 26) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on a petition for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), filed on December 16, 2010, by Plaintiff Kham Singmoungthong ("Plaintiff"). Defendant filed an opposition on January 18, 2011, arguing that the fee requested is unreasonable and should be reduced. Plaintiff filed a reply on January 26, 2011.

On April 8, 2011, the Court held a hearing on the petition to explore whether Ralph Wilborn, who is not a member of the Bar of this Court or the California Bar, can recover fees under EAJA. Linda Ziskin appeared on behalf of Plaintiff and Shea Bond appeared on behalf of the Commissioner. The Court also ordered the parties to submit additional briefing, which was completed on June 29, 2011.

1    The matter is currently before the Court on the parties' briefs, which were submitted to

2    the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

3                                    **BACKGROUND**

4    Plaintiff filed the instant Complaint challenging the denial of benefits on July 29, 2009.

5    On September 17, 2010, the Court granted Plaintiff's Complaint and remanded the action

6    for further proceedings.  The Court found that the ALJ erred (1) in finding that Plaintiff could

7    perform her past relevant work, (2) by failing to develop the record regarding the VE's testimony

8    and the medical evidence where Plaintiff was not represented, and (3) by failing to properly

9    analyze the lay witness testimony.  Judgment was entered in favor of Plaintiff on September 17,

10   2010.

11   By this motion, Plaintiff seeks $10,285.99 in attorneys' fees for 59 hours of attorney time.

12   In opposition, Defendant contends that the requested fees are unreasonable and suggests that the

13   Court award no more than $5,180.09.

14                                    **DISCUSSION**

15   I.    Mr. Wilborn's Entitlement to Fees

16   A.    *Background*

17   The instant application seeks recovery of fees for work performed by attorneys

18   Sengthiene Bosavanh and Ralph Wilborn.[2]  While Ms. Bosavanh is a member of the California

19   State Bar and the Bar of this Court, Mr. Wilborn is not.

20   Mr. Wilborn is a member of the Oregon State Bar and resides in Arizona.  He is also a

21   member of the United States District Court for the District of Oregon, the Ninth Circuit Court of

22   Appeals, the United States Court of Appeals for Veterans Claims and the United States Supreme

23   Court.  December 16, 2010, Affidavit of Ralph Wilborn.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.

[2] In determining whether Mr. Wilborn is entitled to recover EAJA fees in this Court, the Court stresses that it is not questioning the *quality* of his work.  Mr. Wilborn's work product has been consistently as good, or better, than many Social Security practitioners that appear regularly before this Court.

1  Pursuant to his Declaration, he began performing legal work for Ms. Bosavanh in July

2  2009 based on the understanding that his sole compensation would be the fees awarded for his

3  time under EAJA.  Mr. Wilborn's legal work included "primary research and drafting of briefs

4  and ancillary related legal work, at the federal district court level, for, and at the request of, Ms.

5  Bosavanh, as generally authorized under her clients' retainer agreements, on a temporary basis,

6  case-by-case."  The parties agreed that Mr. Wilborn's drafts of briefs submitted to Ms. Bosavanh

7  would be considered, by him, to be "finished work products, appropriate for filing, with little, if

8  any, revision required."  They further agreed that as a member of the Bar of this Court and the

9  Bar of the State of California, Ms. Bosavanh had absolute authority to revise his legal work at her

10  sole discretion and would file the documents under her name in compliance with Local Rules and

11  Federal Rule of Civil Procedure 11.  There was no written agreement, though the parties agreed

12  that compensation for his legal work, if any, would be entirely separate from compensation for

13  Ms. Bosavanh's legal work and limited to any amounts awarded pursuant to E.A.J.A.  May 13,

14  2011, Declaration of Ralph Wilborn.

15  In September 2010, Mr. Wilborn advised Ms. Bosavanh that he would finish his legal

16  work on cases he had already started but would not perform legal work on new cases.  May 13,

17  2011, Declaration of Ralph Wilborn.  Mr. Wilborn has provided legal services in approximately

18  68 cases in this Court.  June 6, 2011, Declaration of Ralph Wilborn.

19  The Commissioner has no objection to Mr. Wilborn's receipt of fees under EAJA.

20  B.  *Analysis*

21  Local Rule 180(b) states, "(e)xcept as otherwise provided herein, only members of the

22  Bar of this Court shall practice in this Court."  Admission to the Bar of this Court is limited to

23  attorneys who are active members in good standing of the State Bar of California.  Local Rule

24  180(a).  However, attorneys who are not members of this Court's Bar may appear pro hac vice.

25  Local Rule 180(b)(2) provides:

26  (2) Attorneys Pro Hac Vice. An attorney who is a member in good standing of, and
eligible to practice before, the Bar of any United States Court or of the highest Court of

27  any State, or of any Territory or Insular Possession of the United States, and who has been
retained to appear in this Court may, upon application and in the discretion of the Court,

28  be permitted to appear and participate in a particular case.  Unless authorized by the
Constitution of the United States or an Act of Congress, an attorney is not eligible to

3

1   practice pursuant to (b)(2) if any one or more of the following apply: (i) the attorney
2   resides in California, (ii) the attorney is regularly employed in California, or (iii) the attorney is regularly engaged in professional activities in California.

3   The Local Rules of this Court also expressly adopt the "standards of professional conduct

4   required of members of the State Bar of California and contained in the State Bar Act, the Rules

5   of Professional Conduct of the State Bar of California and court decisions applicable thereto" for

6   practice before this Court.  Local Rule 180(e).

7   It is undisputed that Mr. Wilborn is not a member of the California Bar or the Bar of this

8   Court.  It is also undisputed that Mr. Wilborn has not applied for admission pro hac vice.

9   The Fourth Circuit Court of Appeals recently issued an instructive decision.  In Priestley

10  v. Astrue, __F.3d __, 2011 WL 2641273, *1 (4th Cir. 2011), the Court held that the use of non-

11  admitted lawyers for brief writing services in Social Security appeals did not present a "special

12  circumstance" sufficient to deny fees as unjust under EAJA.  In Priestley, plaintiffs in three

13  Social Security appeals in the District of South Carolina sought fees for an attorney who was

14  admitted to the Court, as well as fees for two attorneys who were not admitted to practice in

15  South Carolina or before the Court.  The non-admitted attorneys were licensed in Georgia and

16  Pennsylvania and practiced their specialty of briefing Social Security appeals through their law

17  firm in Georgia.  They provided research and drafts of briefs to the admitted attorney for review,

18  signing and filing, and never spoke with the client or opposing counsel.  The two attorneys had

19  worked on dozens of cases in the District of South Carolina since 2003 and their fee requests

20  typically accounted for 75 to 85 percent of the total fees requested.  After the Commissioner

21  opposed the fee requests, the District Court denied the fees because the two attorneys were not

22  admitted to practice law in South Carolina and were not admitted to practice pro hac vice.  The

23  District Court concluded that the out-of-state attorneys' lack of licensure was a "special

24  circumstance" that made reimbursement of their fees "unjust."  28 U.S.C. § 2412(d)(1)(A).

25  In rejecting the District Court's conclusion, the Court of Appeals began with an analysis

26  of EAJA's requirement that a district court award "fees and other expenses" to the prevailing

27  party in a civil action against the United States unless the court finds that the position of the

28  United States was substantially justified or that special circumstances make an award unjust.

1   2011 WL 2641273, *3.  The Court then defined the term "fees and other expenses," and found

2   that the broad definition "indicates, without much doubt, that Congress intended to award a wide

3   range of fees and expenses" unless an exception applies.  2011 WL 2641273, *4.  Consistent

4   with this intent, the Court previously awarded EAJA fees for work performed not only by

5   attorneys, but also by persons doing "tasks traditionally performed by an attorney and for which

6   the attorney would customarily charge the client, regardless of whether a licensed attorney,

7   paralegal or law clerk performed them."  2011 WL 2641273, *4 (citation omitted).  Based on this

8   practice, the Court had "little difficulty in concluding that the EAJA authorizes the plaintiffs to

9   receive reimbursement for the work performed by an attorney, regardless of whether the attorney

10  performing the work is admitted to practice or not."  2011 WL 2641273, *4.  The Court

11  concluded:

12          In relying on this reasoning, we believe that the district court improperly linked
        the requirements for the practice of law in the district court with the requirements of the
13      EAJA, thus limiting the scope of fees that the EAJA otherwise authorizes.  And in doing
        this, the court ended up effectively sanctioning out-of-state attorneys for purported
14      violations of its local rules by denying reimbursement for their fees under the EAJA.  We
        conclude that the issues should not be so mixed, at least in the circumstances of this case,
15      as they actually are separate matters.

16          The district court was, of course, rightfully concerned about the unauthorized
        practice of law in its court, and it has the authority to regulate that through local rules and
17      an array of appropriate sanctions. We need not determine, however, whether Martin and
        Naides violated any local rules or, if they did, what the appropriate sanctions would be,
18      because the violation in question, if any, was so attenuated and technical that it would not
        affect the plaintiffs' claims for fee awards under the EAJA, which does not condition
19      eligibility for reimbursement on whether an attorney is admitted.

20  2011 WL 2641273, *4-5.

21          The Court of Appeals also explained why it rejected the dissent's contention that the out-

22  of-state attorneys "appeared" in the District Court such that their work constituted the

23  unauthorized practice of law:

24          Indeed, their role was quite limited.  Martin and Naides never physically appeared
        in court or before the judge; they never filed a brief or paper in the court; they never
25      communicated with opposing counsel; they never even communicated with the plaintiffs;
        their work agreement was with McChesney, a member of the district court bar, and not
26      with the plaintiffs; and they prepared only drafts of briefs and papers which they then
        submitted to McChesney for editing, signing, and filing with the court.  Even though their
27      names were sometimes included on briefs as attorneys for the plaintiffs and they stated in
        their EAJA affidavits that they were attorneys for plaintiffs, the nature of their
28      brief-writing function in supporting McChesney never changed.  See, e.g., Dietrich Corp.
        v. King Res. Co., 596 F.2d 422 (10th Cir.1979).  Indeed, McChesney could just as well

5

1   have retained an English professor or law professor to assist him in writing briefs and
2   submitted those charges as paralegal type fees, with a legitimate expectation that his
    clients would receive reimbursement.

3       The facts of Mr. Wilborn's involvement in this and related actions are nearly identical.

4   He has provided drafts of briefing to Ms. Bosavanh, who is admitted to practice before this

5   Court, for review, signing and filing.  He does not discuss the case with the client or opposing

6   counsel, does not indicate that he is counsel for Plaintiff on the pleadings and has never

7   physically appeared in this Court.  The reasoning in Priestley is persuasive, therefore, the Court

8   finds that Mr. Wilborn's involvement is not a "special circumstance" under EAJA that would

9   make an award unjust.

10      The Court's conclusion, however, is limited to the circumstances of requests for EAJA

11  fees in Social Security appeals.  Such a finding is logical because Social Security practice in

12  District Courts within the Ninth Circuit, to which Mr. Wilborn is admitted, is controlled by the

13  same Ninth Circuit law.  The Court's finding also takes into consideration the lack of objection

14  from the Commissioner.

15      In relying on the interpretation of EAJA to award Mr. Wilborn fees, the Court's finding is

16  not based on Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815 (9th Cir. 2009), where the

17  decision to award fees was not made in the context of EAJA.  In other words, the Court makes no

18  determination as to whether Mr. Wilborn "appeared" or "practiced" in violation of the Local

19  Rules.  Moreover, in light of the fact that the Court raised this issue and based on Mr. Wilborn's

20  statement that he is no longer accepting work for new cases in this Court, there is no need to

21  address the issue of whether sanctions could, or should, issue.

22  II.    EAJA Analysis

23      Under the EAJA, a prevailing party will be awarded reasonable attorney fees, unless the

24  government demonstrates that its position in the litigation was "substantially justified," or that

25  "special circumstances make an award unjust."  28 U.S.C. § 2412 (d)(1)(A).  An award of

26  attorney fees must be reasonable. Sorenson v. Mink, 239 F.3d 1140, 1145 (9th Cir. 2001).

27  "[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from a fee award,

28  and charges that are not properly billable to a client are not properly billable to the government.

1    *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A court has wide latitude in determining the

2    number of hours reasonably expended. *Cunningham v. County of Los Angeles*, 879 F.2d 481,

3    484 (9th Cir. 1988).

4         Plaintiff requests a total of $10,285.99 for attorney time spent in litigating this action.

5    This breaks down to a total of 59 attorney hours billed at 2009 and 2010 rates. In support of her

6    request, Plaintiff submits itemizations of time spent by (1) Mr. Wilborn, from January 28, 2010,

7    through December 14, 2010; and (2) Ms. Bosavanh, from June 4, 2009, through October 20,

8    2010.

9         Defendant does not dispute that Plaintiff is entitled to a fee award as the prevailing party,

10    nor does he dispute the hourly rate. Rather, he contends that the requested time is excessive.

11    The Court will review Defendant's specific objections.

12    A.    *Ms. Bosavanh's Time*

13        1.    Duplicative Work

14         Defendant first points to numerous entries that he contends are duplicative based on Mr.

15    Wilborn's role as the main researcher and writer.[3]

16         On December 16, 2009, Ms. Bosavanh records 1.0 hour to "receive and check contents of

17    transcript; mail to brief-writer." Plaintiff agrees that the act of sending the record is clerical in

18    nature and therefore concedes .1 hours of this time. This leaves .9 hours, which Defendant

19    contends is duplicative because it was Mr. Wilborn, not Ms. Bosavanh, who ultimately wrote the

20    briefs.

21         The Court agrees. The Government should not be forced to pay increased fees simply

22    because Ms. Bosavanh has decided to employ another attorney to actually write the briefs. While

23    there are certain instances where overlap is warranted, i.e., in reviewing certain documents to

24    assess the merits of the federal court action, it is not warranted here. There is no indication that

25    Mr. Wilborn was unable to determine if the record was complete. Moreover, although Ms.

26    Bosavanh suggests that she had a professional responsibility to review the record to familiarize

27

28         [3] Defendant often fails to identify, by date, the specific entries of time that he opposes. Though the Court reviews each entry, Defendant's failure to identify the exact entry makes it a more difficult task, in some cases, to match the entry to the argument.

herself with facts because she was the attorney signing the briefs, the Court takes this necessity into consideration in allowing for time to review the *actual* briefs.  Therefore, the remaining time billed on December 16, 2009, will not be compensated.

Defendant next objects to time spent receiving, reviewing and forwarding and/or signing certain documents.[4]  Time spent by Ms. Bosavanh reviewing Mr. Wilborn's briefing and signing the documents is compensable based on her responsibility to the Court under Rule 11.  Plaintiff spends a total of 1.6 hours (February 2, March 31 and June 23, 2010) in this capacity and the time will be allowed.  However, the .7 hours (March 1 and April 30, 2010) spent reviewing Defendant's documents and forwarding them to Mr. Wilborn is duplicative and will not be compensated.

Defendant also characterizes .4 hours spent on September 17, 2010, as non-attorney work, but is incorrect.  Ms. Bosavanh reviewed the Court's order remanding the action and notified Mr. Wilborn.  This is work generally performed by an attorney and was not duplicated by Mr. Wilborn.  Accordingly, the time will be allowed.

2.      Reviewing CM/ECF Notifications

Defendant next points to a total of 1.0 hour billed for receiving and reviewing notifications from the Court's electronic filing system (0.1 hour billed on July 29 and 31, August 4, 6, 11 and 18, November 30, and December 1 and 2, 2009, and January 15, 2010).  Reviewing Court filings such as the USM Instruction Form, notice of lodging of the Administrative Record and Designation of Counsel, are tasks typically performed by an attorney.  Although mundane, the attorney is ultimately responsible for the action progressing through this Court.  The time will be allowed.

3.      Service

Defendant also objects to 1.2 hours spent preparing service documents, serving Defendant, and filing the proof of service and consent form.  Filing documents with the Court and reviewing service documents are tasks that are routinely performed by an attorney.  *See eg. Williams v. Apfel, 2000 WL 684259, *2 (S.D. Ind. 2000)* (preparing the complaint and return of

---

[4] Plaintiff has conceded the .1 hour spent on January 5, 2010.

8

service documents and reviewing the answer, the Commissioner's brief, motions, and court orders are not tasks typically performed by clerical staff, as the attorney is responsible for seeing that the tasks are performed correctly). This 1.2 hours will therefore be allowed.

Defendant also points to a .2 hour entry which he characterizes as "mailing." Defendant does not identify the date of the entry, though there is no such separate entry for mailing *service* documents. There is an entry on January 30, 2010, relating to revising and mailing the fee agreement and related documents to the client. The Court agrees that the task of mailing is clerical in nature, but as this entry also relates to revising client documents and the time spent mailing is likely only a minute or two, the Court will allow the time.

4.      Pre-Complaint Time

Defendant objects to 1.3 hours spent on June 4, 2009, reviewing the Appeals Council denial and assessing the merits of the federal court action. Time spent reviewing documents in preparation of a court action is compensable. 28 U.S.C. § 2412(d)(2)(A); *Lucas v. White*, 63 F.Supp.2d 1046, 1058-1059 (N.D.Cal. 1999) (time reasonably spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the action is recoverable under EAJA). 1.3 hours is a reasonable amount of time to perform the tasks identified and there was no duplication of efforts. Accordingly, the Court will allow the time.

5.      Extensions of Time

Defendant objects to 1.6 hours spent in connection with two extensions of time requested by Plaintiff. Defendant reasons that "to bill the Commissioner for agreeing to an accommodation for Plaintiff would be inequitable." Opposition, at 7. Requests for extensions of time, regardless of the requesting party, are common in Social Security cases and often benefits both parties. Plaintiff has agreed to cut the 1.6 hours to .4 hours, which is reasonable for the preparation and filing of two stipulations, Plaintiff will therefore be compensated .4 hours for this work.

6.      EAJA Motion

Finally, Defendant objects to Ms. Bosavanh's time entry on October 20, 2010, when she spent 1.5 hours preparing EAJA fee time documents. Defendant characterizes the time as excessive and clerical in nature.

1    Contrary to Defendant's suggestion, preparing an itemized time sheet for an EAJA fee

2    motion is not a clerical task as counsel must review the time records to make sure the time is

3    properly billed to the client, ensure that time billed is accurate and redact any privileged

4    information.  *See Fortes v. Astrue,* 2009 WL 3007735, *4 (S.D. Cal. 2009) (allowing 2.75 hours

5    reviewing time records and logs to prepare a billing sheet in support of an EAJA motion).  The

6    Court will therefore allow 1.5 hours for Ms. Bosavanh.

7         7.    Award

8         Defendant does not object to the time spent from June 9, 2009, through July 29, 2009, or

9    time spent on November 13, 2009, February 2, 2010, and September 17, 2010.

10        Ms. Bosavanh is therefore awarded in 6.4 hours in 2009 and 4.6 hours in 2010.

11   B.    Mr. Wilborn's Time

12        1.    Time Spent in Preparation of Opening Brief

13        Defendant contends that the time spent by Mr. Wilborn on the Opening Brief (16 hours)

14   and Reply Brief (17 hours) is excessive and should be reduced by 18.5 hours.

15        As an initial matter, the Court cautions Defendant against continuing to make

16   comparisons between the Confidential Letter Brief and the Opening Brief in an effort to

17   undermine the time spent on the Opening Brief.  This Court has previously explained that the

18   Confidential Letter Brief is "for settlement purposes only and will not be used as evidence

19   against a party to these proceedings."  *Belcher v. Astrue,* 2010 WL 5111435, * 1 (E.D.Cal. 2010).

20   Therefore, Defendant's argument that the Opening Brief "copied the settlement letter in large

21   part" and that Mr. Wilborn "convert[ed] the settlement letter to the opening brief" is not well

22   taken.  Opposition, at 8-9.  **Continued citation to the Confidential Letter Brief in future**

23   **actions may result in the imposition of Rule 11 sanctions.[5]**

24        The Court agrees, however, that certain time spent was excessive.  The Court does not

25   need to compare the Confidential Letter Brief to the Opening Brief to conclude that spending

26

27

28        [5] The Court has recently warned Defendant against making comparisons to the Confidential Settlement
     Letter in another action and recognizes that this briefing was likely completed prior to the Court's warning.

8.75 hours reviewing the ALJ's decision, analyzing the record and preparing the Confidential

Letter Brief likely framed the issues and allowed some cross-over for the Opening Brief.

From March 29, 2010, through March 30, 2010, Mr. Wilborn spent 16 hours reviewing

the ALJ's decision, reviewing the Administrative Record, performing research and writing the

Opening Brief.  The document, excluding the table of contents, was 31 pages.  The brief

presented 7 arguments, some of which were based on the fact that Plaintiff was unrepresented at

the hearing.  As this Court has previously recognized, representing a claimant who was

unrepresented at the hearing requires extra attention to the administrative proceedings and often

includes issues not encountered on a regular basis.  Based on the prior time spent in preparation

of the Confidential Letter Brief, yet taking into account the more detailed review required where

a claimant is unrepresented at the administrative level, the Court finds that this time should be

reduced by 4 hours.

Insofar as Defendant suggests that Mr. Wilborn should not be compensated for the

portion of the Opening Brief dedicated to Plaintiff's challenge to the Commissioner's

regulations, he is incorrect.  Defendants cites *Hardisty v. Astrue*, 592 F.3d 1072 (9th Cir. 2010),

and contends that the Ninth Circuit has "held that EAJA fees should not be compensated for

issues not adjudicated."  Opposition, at 9.

In *Hardisty*, the Ninth Circuit reviewed the district court's denial of an EAJA fee petition.

In affirming the denial, the Ninth Circuit held that the provisions of the fee-shifting statute do not

extent fee awards to "positions of the United States challenged by the claimant but unaddressed

by the reviewing court."  *Hardisty*, 529 F.3d at 1077.  The Court's decision was based in part on

the Supreme Court's command "that a request for attorney's fees should not result in a second

major litigation."  *Id.* at 1077-1078 (*citing Buckhannon Bd. & Care Home, Inc. v. West Virginia

Dept. Of Health & Human Res.*, 532 U.S. 598, 609 (2001)).  Requiring the district court to

determine whether the government's position on unadjudicated issues was substantially justified

would put the court "in the position of conducting essentially de novo review of the entire case

for purposes of the fee litigation, contrary to the command against 'spawn[ing] a second

1  litigation' of the Supreme Court and to the far more streamlined 'substantial justification' review

2  envisioned by the EAJA itself."  *Id.* at 1078 (internal citations omitted).

3        As this Court has previously determined, however, *Hardisty* should not be extended to

4  the facts of this action.  The district court in *Hardisty* found that the government's position was

5  substantially justified on the issue upon which remand was based, and the issue was therefore not

6  a basis for EAJA fee-shifting.  *Hardisty*, 592 F.3d at 1075.  The district court also rejected the

7  plaintiff's argument that fees should be awarded for the government positions that he challenged

8  but that the Court did not address when it originally reviewed the case.  Here, however,

9  Defendant has conceded the substantial justification issue and challenges only the reasonableness

10  of the fee request.  This Court is therefore not faced with undertaking the type of "second

11  litigation" rejected in *Hardisty.*

12        Moreover, extending *Hardisty* to the reasonableness analysis is both contrary to Supreme

13  Court precedent and wholly unfeasible.  In *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), the

14  Supreme Court explained that an attorney may not be entitled to an award for work on "distinctly

15  different claims for relief that are based on different facts and legal theories."  However, the

16  Court recognized that some cases present a single claim for relief that involves a common core of

17  facts and is based on related legal theories:

18        Much of counsel's time will be devoted generally to the litigation as a whole, making it
          difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be
19        viewed as a series of discrete claims. Instead the district court should focus on the
          significance of the overall relief obtained by the plaintiff in relation to the hours
20        reasonably expended on the litigation.

21              Where a plaintiff has obtained excellent results, his attorney should recover a fully
          compensatory fee. Normally this will encompass all hours reasonably expended on the
22        litigation. . .

23  *Hensley*, 461 U.S. at 435.  Social Security appeals are akin to a single claim for relief based on

24  one set of facts and involving related legal theories.

25        Indeed, at least in cases where there is a single claim for relief, i.e., a claim for Social

26  Security benefits, attorneys are not likely to itemize their billing entries according to specific

27  arguments.  Defendant invites this Court to reduce the award proportionally to the amount of

28  pages dedicated to briefing the issue upon which remand was based.  Doing so, or engaging in

any other method for determining the amount of time spent on a single argument, would be speculative, at best.

2.    Time Spent in Preparation of Reply

In preparation of the Reply, Mr. Wilborn bills a total of 17 hours.  This includes time spent reviewing the Opening Brief and the ALJ's decision, reviewing and analyzing Defendant's Opposition and preparing the Reply.  While the Court appreciates the need for counsel to refresh his memory, this is now the third time that he has reviewed the ALJ's decision and the Administrative Record.  The Court therefore reduces the time spent on the reply by 2 hours to account for the duplicate work.

The Court also notes that on June 22, 2010, Mr. Wilborn spent 4.75 hours reading and analyzing the cases cited in Defendant's Opposition and "fact-checking" the accuracy of Defendant's allegations.  Defendant's Opposition, however, did not include numerous citations to cases not encountered regularly in Social Security actions.  While it did include an extensive analysis of *Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001), Plaintiff had already discussed the case at length in the Opening Brief.  Certainly, Mr. Wilborn is entitled to time for researching and analyzing Defendant's citations, but the time should be reduced by 2.75 hours.

Defendant contends that the time spent on the Reply should be further reduced because large segments of the Reply "were copied from case law and other authorities" and from earlier-filed briefs.  The Court will not engage in an analysis of the complexity of the content included on each page of the Reply Brief.  The Court also notes that the Reply, which was 19 pages excluding the table of contents, was in response to Defendant's 23 page Opposition.  Accordingly, the Court will allow the remaining 8.25 hours spent in preparation of the Reply.

3.    EAJA Motion

On December 14, 2010, Mr. Wilborn billed 2.25 hours for reviewing Defendant's most recent EAJA settlement offer, emailing Ms. Bosavanh to recommend declining the offer, and drafting the EAJA application and supporting documentation.  Above, the Court determined that 1.5 hours was reasonable for Ms. Bosavanh to spend in creating the EAJA billing statement and Mr. Wilborn will therefore be allotted the same amount of time for this task.  This leaves .75

1   hours for reviewing Defendant's EAJA settlement proposal *and* drafting the EAJA motion.  The

2   Court finds that this is a reasonable amount of time.

3          Defendant's argument that the Court should disallow fees for the Reply if the Court

4   agrees with the arguments in Opposition is rejected.  The Court allows Plaintiff to respond to

5   arguments made in opposition and it reviews the Reply prior to making its decision.  Therefore,

6   fees will not be denied solely on the basis of the Court's agreement with Defendant's arguments.

7   That the Court may ultimately adopt Defendant's position does not mean that Plaintiff was

8   unreasonable in spending time on the Reply.

9          4.      Award

10         Based on the above reductions, Mr. Wilborn should be compensated for 24.25 hours for

11  time spent from March 29, 2010, through June 23, 2010, and for 2.25 hours spent on December

12  14, 2010.  There were no objections to the total of 9.75 hours spent on January 28 and 29, and

13  November 1 and 30, 2010, and that time will be also be allowed.

14                                          **<u>AWARD</u>**

15         Plaintiff's motion is therefore GRANTED.  Plaintiff is entitled to an award in the total

16  amount of $8,236.38, broken down as follows:

17         Mr. Wilborn:

18         36.25 hours at $174.64 per hour    $6,330.70

19         Ms. Bosavanh:

20         6.4 hours at $172.24 per hour AND 4.6 hours at $174.64 per hour   $1,905.68

21         This amount is payable to Plaintiff pursuant to *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010).

22

23      IT IS SO ORDERED.

24    **Dated:   <u>July 12, 2011</u>**          <u>      /s/ **Dennis L. Beck**      </u>
                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                                14